In re **MADISON INDUSTRIES, INC.,** Debtor.

**STATE OF NEW JERSEY, DEPARTMENT OF ENVIRONMENTAL PROTECTION AND ENERGY,** Plaintiff,

v.

**MADISON INDUSTRIES, INC.,** Defendant.

**Civ. No. 93–2347.**
**Bankruptcy No. 92–33121.**

United States District Court,
D. New Jersey.

Sept. 22, 1993.

Rachel Jeanne Lehr and Charles A. Licata, Trenton, NJ, for State of New Jersey, Department of Environmental Protection and Energy.

Kenneth A. Rosen, Ravin, Sarasohn, Cook, Baumgarten, Fisch & Baime, Roseland, NJ, for debtor Madison Industries, Inc.

BROWN, District Judge.

## I. INTRODUCTION

This matter comes before the Court on an appeal by the State of New Jersey, Department of Environmental Protection and Energy from the bankruptcy court's Order, filed June 25, 1993, in favor of Madison Industries, Inc. and this Court has jurisdiction in accordance with 28 U.S.C.A. § 158(a) (West 1993). For the reasons set forth herein, the decision below is hereby reversed.

## II. BACKGROUND

Madison Industries, Inc. ("Madison") and an affiliate, Old Bridge Chemicals, Inc. ("OBC"), operate a chemical manufacturing operation at Old Waterworks Road in Old Bridge Township, New Jersey.[1] Specifically, the companies receive raw materials for the production of copper chloride and copper ammonium chloride used in the manufacture of copper and zinc chemicals and co-product micronutrient fertilizer. Stored on the industrial site in Old Bridge Township is a large, open and uncovered pile of fertilizer co-products. The Department of Environmental Protection and Energy (the "DEPE") contends that this open fertilizer pile violates the Resource Conservation and Recovery Act of 1976 (the "RCRA"), codified in 42 U.S.C. §§ 6901–6991.[2]

In October, 1988, OBC filed a petition requesting that the DEPE evaluate OBC as a waste reuse facility. As part of the evaluation process, the DEPE inspected the manufacturing site of OBC and Madison. While inspecting the site, the DEPE discovered a large uncovered fertilizer pile. On or about January, 1990, the DEPE denied OBC's request to operate as a waste reuse facility and

determined that the uncovered fertilizer pile stored on the industrial site required analysis for purposes of New Jersey's environmental laws. Subsequently, the DEPE notified Madison and OBC that the pile was classified as solid hazardous waste stored and handled in breach of the state environmental laws. Madison and OBC contested the DEPE's finding which identified the fertilizer pile as hazardous waste. As a result, Madison and OBC sought an administrative appeal of this determination.

Upon receiving no immediate response to the request for an administrative appeal, OBC moved for leave to appeal and for emergent relief before the Appellate Division of the Superior Court of New Jersey. Prior to the Appellate Division consideration of OBC's application, OBC and DEPE agreed to a stay of all proceedings until a formal ruling by the Commissioner of the DEPE was rendered on the issue of the fertilizer pile as hazardous waste. As of yet no determination has been made.

Since 1981, Madison and the other defendants have been involved in a number of lawsuits in which the DEPE has sought various forms environmental compliance. Recently, on July 2, 1992, Madison was ordered by the Superior Court of New Jersey to post financial security and take measures to remediate groundwater contamination resulting from its operational and disposal practices. On November 24, 1992, shortly after the Appellate Division affirmed the July 2, 1992 Order, Madison filed a voluntary Chapter 11 petition pursuant to the Bankruptcy Code. This Chapter 11 bankruptcy is presently pending before the Honorable William H. Gindin, Chief United States Bankruptcy Judge.

---

1. OBC is a defendant in the state court action as are Arnet Realty—owner of the site—and Hyman Bzura, Nettie Bzura and Arnold Asmanthe, principals of Madison, OBC and Arnet Realty.

2. RCRA is a federal directive promulgated for the regulation of hazardous waste generation, treatment, storage, and disposal to promote health and welfare. As authorized by the United States Environmental Protection Agency, states can adopt their own hazardous waste plan in reciprocate for RCRA. The New Jersey Legislature adopted their own version of the RCRA when promulgating the implementing regulations,

N.J.A.C. § 7:26–1 *et seq.*, under the Solid Waste Management Act (the "SWMA"), codified in N.J.S.A. § 13:1E–1 *et seq.* Pursuant to N.J.A.C. § 7:26–7.4(a), every hazardous waste generator, such as Madison and OBC, must comply with various identification and tracking procedures when generating, storing, and transporting solid waste materials. The DEPE alleges that Madison, OBC, and the other defendants violated such state environmental laws by storing an open, uncovered pile of fertilizer co-products on their industrial site.

On March 19, 1993, the DEPE filed an order to show cause along with a verified complaint in state court. The DEPE sought injunctive relief and statutory penalties for Madison's and OBC's failure to clean up the fertilizer pile which violated New Jersey's version of the RCRA. At a status conference before the bankruptcy court on April 2, 1993, it was disclosed by Madison's bankruptcy counsel that the DEPE had filed the March 19, 1993 action. At the status conference, the bankruptcy court requested that the DEPE file a motion so that the bankruptcy court could determine whether the DEPE had violated the automatic stay provisions of 11 U.S.C. § 362 by commencing such an action. On April 21, 1993, the bankruptcy court held a hearing and concluded that the DEPE had transgressed the provisions of section 362 of the Bankruptcy Code. On May 5, 1993, the bankruptcy court signed the Order, being appealed here, which enjoined the DEPE "pursuant to the automatic stay provisions of 11 U.S.C. § 362(a), from proceeding with the enforcement action only as instituted against [Madison]."[3]

## III. DISCUSSION

### A. STANDARD OF REVIEW

■ The Bankruptcy Court's legal conclusions are subject to plenary review, and its finding of facts are scrutinized under a clearly erroneous standard. *See* Fed.R.Bankr.P. 8013; *J.P. Fyfe, Inc. v. Bradco Supply Corp.,* 891 F.2d 66, 69 (3d Cir.1989) (citations omitted); *Torwico Electronics, Inc. v. State of New Jersey, Dept. of Environ. Protection and Energy,* 153 B.R. 24 (D.N.J.1992), *aff'd,* 8 F.3d 146 (3d Cir.1993).

### B. EXCEPTIONS TO THE AUTOMATIC STAY

■ A review of Bankruptcy Code section 362(a), (b)4 & (b)5 and the Third Circuit's dispositive holding in *Penn Terra Ltd. v. Dept. of Environ. Resources,* 733 F.2d 267

(3d Cir.1984), reveal that the bankruptcy court erred when ruling that the DEPE's March 19, 1993 enforcement actions violated the automatic stay provision of 11 U.S.C. Section 362. Thus, this Court reverses the bankruptcy court's Amended Order of June 25, 1993.

The United States Congress, in 11 U.S.C. Section 362, established the parameters of the automatic stay and its effect on a state's police and regulatory powers. Section 362 states in pertinent part:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities.

*Id.* (West 1993). Congress, however, has unquestionably carved out an exception to the automatic stay in reference to a state's ability to protect the health and welfare of its citizens. Subsection (b) of 11 U.S.C. Section 362 provides:

(b) The filing of a petition under section 301, 302, or 303 of this title does not operate as a stay—

. . . .

(4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

(5) under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

*Id.*

Upon reading the legislative history of sections 362(b)4 and (b)5, it is apparent that Congress intended for a state's police and regulatory powers to include environmental protection actions. Specifically, the legisla-

---

**3.** On June 25, 1993, the bankruptcy court amended its May 5, 1993 Order and held:

[T]he State be, and hereby is enjoined pursuant to the automatic stay provisions of 11 U.S.C. § 362(a) from proceeding with the enforcement action instituted against the Debtor to the

extent that the State seeks (i) to recover any money form the Debtor; and (ii) equitable relief against the Debtor respecting *pre-petition* violations by the Debtor of environmental laws. . . .

tive history of Bankruptcy Code Section 362 states in pertinent part:

> Paragraph (4) excepts commencement or continuation of actions and proceedings by governmental units to enforce police or regulatory powers. Thus, where a government unit is suing a debtor to prevent or stop violation of fraud, *environmental protection*, consumer protection, safety ... the action or proceedings not stayed under the automatic stay.

*Id.* (emphasis added). Based on a strict statutory reading of section 362 and its accompanying legislative history, one can ascertain that the DEPE, to effectuate its police powers, was exempt from the automatic stay. Specifically, the DEPE was warranted in going to state court to compel Madison to clean-up its hazardous waste pile.

Moreover, the Third Circuit, in *Penn Terra*, ruled that a state enforcing its environmental compliance laws is exempt from the automatic stay. In *Penn Terra*, a debtor filed a Chapter 7 petition in bankruptcy after failing to comply with Pennsylvania state environmental regulations. *Id.* at 269–70. Additionally, Penn Terra, the debtor, violated a consent order pursuant to which Penn Terra agreed to rectify its environmental violations. *Id.* at 270. Subsequent to filing the petition, Pennsylvania sought enforcement of the consent order and compliance with the state's environmental laws. *Id.* As a result, the debtor, pursuant to section 362, asserted that the state's actions were tantamount to a enforcement of a monetary judgment and moved to stay the state's action. *Id.*

The bankruptcy court held that the actions instituted by the State of Pennsylvania were actions to enforce a money judgment and therefore did not fall within the exception to § 362(a). *Id.* at 270. Pursuant to that ruling, the bankruptcy court preliminarily enjoined Pennsylvania from enforcing its environmental action against the debtor. *Id.* On appeal, the district court affirmed the lower court's ruling. *Id.* Ultimately, the Third Circuit reversed. *Id.* at 270–71. The Third Circuit stated that the state's enforcement of its environmental laws was exempt from the automatic stay:

> It first is clear to us that the actions taken by [Pennsylvania] in obtaining and attempting to enforce the Commonwealth Court's injunction falls squarely within Pennsylvania's police and regulatory powers. [Pennsylvania] seeks to force Penn Terra to rectify harmful environmental hazards. *No more obvious exercise of the State's power to protect the health, safety, and welfare of the public can be imagined.*

*Id.* (emphasis added).

The Third Circuit also rejected Penn Terra's assertion that Pennsylvania's enforcement of the environmental laws was an attempt to enforce a monetary judgment. *Id.* at 275. The court noted that

> an important factor in identifying a proceeding as one to enforce a money judgment is whether the remedy would compensate for *past* wrongful acts resulting in injuries already suffered, or protect against potential *future* harm. Thus, it is unlikely that any action which seeks to prevent culpable conduct *in futuro* will, in normal course, manifest itself as an action for a money judgment, or one to enforce a money judgment.... Yet we cannot ignore the fundamental fact that, in contemporary times, almost everything costs something. An injunction which does not compel some expenditure or loss of monies may often be an effective nullity.

*Id.* at 278. Thus, based on *Penn Terra*, the DEPE's actions to enforce Madison's compliance with New Jersey's environmental compliance laws is an "obvious exercise of the State's power to protect the health, safety, and welfare of the public." *Id.* Moreover, although the injunction and mandatory noncompliance penalties will cause the debtor to expend funds to clean-up the site, it is not tantamount to the enforcement of a monetary judgment. As the Third Circuit noted in *Penn Terra*, "in contemporary times, almost everything costs something. An injunction which does not compel some expenditure or loss of monies may often be an effective nullity." *Id.* In this instance, the DEPE's statutory penalties merely give "teeth" to New Jersey's environmental laws. Because this Court finds that the bankruptcy court erred as a matter of law in concluding that

the DEPE's environmental actions were not exempt from the automatic stay, the June 25, 1993 Amended Order of the bankruptcy court is hereby reversed and remanded for further proceedings consistent with this opinion. Accordingly, the remaining issues pertaining .to the accuracy of the bankruptcy court's May 5 Order and June 25 Amended Order are dismissed as moot.